J-S46032-14

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| IN RE: ELSIE M. BENDER | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Petition for the Appointment of a | : | |
| Guardian of the Person and Estate | : | |
| Of Elsie M. Bender, an Alleged | : | |
| Incapacitated Person | : | |
| | : | |
| | : | No. 304 MDA 2014 |

Appeal from the entered on Order of February 8, 2014,
in the Court of Common Pleas of Lebanon County
Orphans' Court Division, No: 2012-517

BEFORE: SHOGAN, LAZARUS and MUSMANNO, JJ:

MEMORANDUM BY MUSMANNO, J.:                **FILED AUGUST 20, 2014**

Elsie M. Bender ("Bender") (d.o.b. 3/25/42) appeals from the Order adjudicating her an incapacitated person, and confirming the appointment of Brian D. Brooks, d/b/a Pennsylvania Guardianship Association ("Brooks"), as guardian for the person and estate of Bender. We affirm.

In its Opinion, the Orphans' Court set forth the relevant history underlying the instant appeal, which we incorporate herein by reference. Orphans' Court Opinion, 4/21/14, at 2-5.

On appeal, Bender presents the following claims for our review:

> May the [Orphans' Court] usurp the freedom of choice expressed by a mentally competent adult to either refuse, forgo or ignore a medical treatment regimen, even if that refusal or forbearance may lead to her further injury or death?

Brief of Appellant at 2.

Bender challenges the trial court's adjudication of her as an incapacitated person. *Id.* at 7-8. Bender asserts that this case is about "whether [] Bender has the right to decide for herself, as a mentally competent adult, whether to assume the risk of personally managing her disease, or whether the court has the power to take away that right and make that decision for her." *Id.* at 8. Bender argues that, contrary to the trial court's Opinion, she is "refusing" treatment. *Id.* (emphasis omitted). Citing *In Re: Estate of Border*, 68 A.3d 946 (Pa. Super. 2013), Bender claims that a competent adult has the absolute right to refuse treatment. Brief of Appellant at 9.

According to Bender, the "treatment" she is refusing is not the administration of insulin, but being forced to administer insulin under the direction and control of others. *Id.* at 10. She objects to nurses having control over decisions regarding the amount and timing of her insulin injections. *Id.* at 10-11. Bender states that she has no dependents, and her right to self-determination is not outweighed by the interest of the state in preserving her life. *Id.* at 14. Finally, Bender advises that she has no intention of committing suicide. *Id.* at 15.

A person is presumed to be mentally competent; incapacity must be proven by clear and convincing evidence. *In re Hyman*, 811 A.2d 605, 608 (Pa. Super. 2002). "Our review of the trial court's determination in a competency case is based on an abuse of discretion standard, recognizing,

- 2 -

of course, that the trial court had the opportunity to observe all of the witnesses, including, as here, the allegedly incapacitated person." *Id.* "A finding of mental incompetency is not to be sustained simply if there is any evidence of such incompetency[,] but only where the evidence is preponderating and points unerringly to mental incompetency." *Id.* Once an individual has been found incapacitated and in need of guardianship services, it then becomes the court's responsibility to appoint an individual to serve, granting limited or plenary powers consistent with the incapacitated person's needs. *Estate of Haertsch*, 649 A.2d 719, 720 (Pa. Super. 1994).

In its Opinion, the Orphans' Court set forth the evidence underlying its adjudication, which is supported in the record. Orphans' Court Opinion, 4/21/14, at 3-5. In particular, the Orphans Court observed Bender's multiple hospitalizations resulting from her diabetes, her diagnosis of non-specific dementia affecting short-term memory, her sons' consent to the appointment of Brooks as guardian, and the Orphans' Court's finding that Bender is not refusing treatment. *See id.* at 3-5, 6. The Orphans' Court's findings are supported in the record, and its legal conclusions are sound. Accordingly, we affirm on the basis of the Orphans' Court's Opinion with regard to the claim raised by Bender.

Order affirmed.

Lazarus, J., concurs in the result.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: <u>8/20/2014</u>

# IN THE COURT OF COMMON PLEAS
## OF LEBANON COUNTY, PENNSYLVANIA

## ORPHAN'S COURT DIVISION

IN RE:

Petition for the Appointment of a
Guardian of the Person and Estate
Of ELSIE M. BENDER, an alleged
Incapacitated Person

No. 2012-00517

## OPINION
## I.   PROCEDURAL & FACTUAL HISTORY

On August 6, 2012, Ms. Elsie M. Bender (herein "Ms. Bender") was transported by ambulance to Good Samaritan Hospital (herein "GSH") where she was admitted and treated for diabetic ketoacidosis resulting from extremely high blood sugar.[1]  On August 23, 2012, GSH filed both an Emergency Petition for Appointment of Interim Guardian of the Person and Estate of Elsie M. Bender, an Alleged Incapacitated Person (herein "the Emergency Petition") and a Petition for Appointment of Interim Guardian of the Person and Estate of Elsie M. Bender, an Alleged Incapacitated Person (herein "the Petition") (collectively herein "the Petitions").  These Petitions requested that the Court appoint Brian D. Brooks, d/b/a Pennsylvania Guardianship Association (herein "Mr. Brooks") as guardian of the

---

[1] On August 3, 2012, Ms. Bender had been discharged from GSH to Cedar Haven Nursing Home for similar diabetic complications.  Against medical advice, Ms. Bender signed herself out of Cedar Haven that same evening.

2

SCANNED IMAGE  M

person and estate of Ms. Bender.[2] The Emergency Petition was granted on August 23, 2012 and a hearing on the Petition was scheduled for September 24, 2012.

On September 24, 2012, the parties stipulated that Ms. Bender had regained capacity since her initial hospitalization. After the hearing, Ms. Bender signed herself out of Manor Care Lebanon (herein "Manor Care") against medical advice. Two days, later on September 26, 2012, Ms. Bender was transported to GSH and was re-admitted the following day as a result of her diabetes. GSH filed a second Emergency Petition for Appointment of Interim Guardian (herein "Second Emergency Petition") on behalf of Ms. Bender, again, requesting Mr. Brooks be appointed as guardian. In the Second Emergency Petition, GSH asserted that Ms. Bender had been hospitalized as a result of her diabetes seven times since January 1, 2012 and had been to the Emergency Department twenty three times for the same condition. GSH also requested a hearing be scheduled on the Petition that was filed on August 23, 2012.[3] On October 10, 2012, the Court Ordered Mr. Brooks to be the appointed interim guardian of Ms. Bender.

On November 29, 2012, a hearing on the Petition was held resulting in Ms. Bender being adjudged an incapacitated person and Mr. Brooks was appointed as guardian of her person and estate. It was also ordered that the matter should be re-presented to the Court within four to six months to discuss the possibility of Ms. Bender returning to her own home. At the November 29, 2012 hearing, Dr. J. Byard Yoder testified to Ms. Bender's history of severe diabetes and hospitalizations resulting from diabetes. (N.T. 11/29/2012) Dr. Yoder also testified that Ms. Bender had been diagnosed with non-specific dementia which affects short term memory. (N.T. at 10, 11/29/2012) Ms. Bender had been instructed prior to each discharge from GSH on the proper way to test her blood sugar and inject herself with insulin.

---

[2] Ms. Bender's two sons, Shawn Bender and Keith Bender, consented to the appointment of Mr. Brooks as guardian.
[3] The Petition filed with the first Emergency Petition was never withdrawn.

3

(N.T. at 9, 11/29/2012) Dr. Yoder testified that on the occasions when he was present for these instructions, Ms. Bender would say she understood, but five to ten minutes later she could not recall the instructions. (N.T. at 10, 11/29/2012) Ms. Bender was a resident at Tremont Nursing Home (herein "Tremont") at the time of the November hearing.[4]

A hearing to review the matter was held on May 28, 2012. At that time Ms. Bender had been transferred to Manor Care Lebanon to be closer to her two sons. Christine Verna, the Social Services Director at Manor Care, testified at the hearing on May 28, 2013 that Ms. Bender had been instructed on how to properly check her blood sugar and determine if an insulin injection is needed and how to make the injection. She also testified that Ms. Bender did not always remember to check her blood sugar without being prompted to do so by the nursing staff; that Ms. Bender did not always report her blood sugar levels accurately; and that Ms. Bender occasionally attempted to inject the incorrect amount of insulin or make the injection in the wrong manner. (N.T. at pp 10-24, 05/28/2012) At the end of the hearing, this Court still had great concern about Ms. Bender's ability to take care of herself at home without supervision. The Court ordered that Mr. Brooks remain as guardian and that Manor Care work with Mr. Brooks and Ms. Bender's sons to provide Ms. Bender with the assistance and care should would need to return to her own home. The Court also requested that Manor Care get a Flexpen for Ms. Bender's insulin injections to make it easier for her to measure the insulin and make the injection herself.[5]

The Court scheduled another hearing to review the matter on September 3, 2013. Ms. Verna testified again and reported that Ms. Bender was adjusting well to

---

[4] Prior to the appointment of Mr. Brooks as guardian, neither Cedar Haven nor Manor Care would accept Ms. Bender as a resident because she had previously signed herself out of those facilities against medical advice.
[5] This was to be a trial run of at least two weeks with supervision of the nursing staff to instruct Ms. Bender on the use of the Flexpen.

the Flexpen, but was still having problems remembering to check her blood sugar and give herself insulin injections without being reminded by the nursing staff. (N.T. at pp 50-68, 09/3/2013) The record reflects that at the time of the hearing, no arrangements had been made for services to assist Ms. Bender in caring for herself at home. The Albright Life program had rejected Ms. Bender because of her history of non-compliance with medical advice and necessary treatment procedures. Other service agencies had not been able to collect the necessary information from Ms. Bender to determine her eligibility for their services.

Ms. Bender has not been to the hospital for diabetes related issues since being appointed a guardian.[6] This Court's concerns about Ms. Bender's ability to manage her diabetes without supervision or assistance nevertheless remained. As a result of these concerns and Ms. Bender's track record of hospitalizations, on September 17, 2013, this Court once again adjudged Ms. Bender to be an incapacitated person and appointed Mr. Brooks as the guardian of her person and estate.

On January 28, 2014, GSH filed a Motion to Confirm the Appointment of Guardian. The Motion was granted on February 7, 2014. On February 19, 2014, Ms. Bender appealed to the Superior Court of Pennsylvania from the Order of February 7, 2014 and filed a Statement of Issues for Appeal.

## II.  DISCUSSION

An "incapacitated person" is an adult whose ability to receive and evaluate information effectively and communicate decisions in any way is impaired to such a significant extent that he is partially or totally unable to manage his financial resources or to meet essential requirements for his physical health and safety. **20 Pa.C.S.A. § 5501.** The issue before this Court is whether Ms. Elsie M. Bender is

---

[6] Ms. Bender was taken to the hospital once for making a suicidal statement.

5

partially or totally unable to meet essential requirements for her physical health and safety. Specifically, this Court is concerned that Ms. Bender is incapable of checking her blood sugar and giving herself insulin injections without the supervision and/or assistance of others.

Ms. Bender is not refusing treatment, as suggested in the Statement of Errors Complained of on Appeal. Ms. Bender has repeatedly made statements to the Court that she is aware that she needs certain treatments and promises to check her blood sugar and give herself insulin injections. However, Ms. Bender has consistently failed to do these things. Her ability to meet essential requirements for her physical health is at least partially impaired and thus she is not capable of administering her own treatment.

Before being appointed a guardian, Ms. Bender would sign herself out of the nursing facility against medical advice.[7] On these occasions, Ms. Bender would be brought to the hospital within two to three days because of complications with her diabetes. Ms. Bender has been admitted to the hospital six times due to these complications; five of those times her condition was so severe that she was admitted to the ICU. Ms. Bender has a pattern of failing to manage her diabetes while on her own. Her diabetes has been well controlled since she has been a resident of Manor Care. The Court believes that the reason for this difference is that Ms. Bender requires the supervision and assistance that she receives while in a nursing facility.

## III.  CONCLUSION

For the reasons set forth above, the Court affirms its Order of February 7, 2014 adjudging Ms. Elsie M. Bender to be an incapacitated person and appointing Mr. Brooks as guardian to her person and estate.

---

[7] Ms. Bender has been a resident at Manor Care, Tremont Nursing Home, and Cedar Haven.

6